ShackelfoRD, J.,
delivered the opinion of the Court.
This suit is brought by the complainants against the defendants, a body politic and corporate, in the city of Nashville, organized under the provisions of An Act, passed by the General Assembly of the State of Tennessee, on the 4th of February, 1854. The object and purpose, as expressed in the Act of Incorporation, was, to form a mutual benefit and stock ■company, to enable the working men in the city of Nashville, to become their own landlords. All the powers incident to corporations, were conferred.
By the 2d section of the Act, the power was given the members of the corporation, to adopt such constitution, by-laws, and regulations, for its government, and to choose such officers and agents for the transaction of their business; and such constitution, rules, and regulations, should have the force and effect of legal enactments upon its members; provided, that such constitution, rules, and regulations should not conflict with the law of the land.
The bill alleges that, by the Act of Incorporation, the Association was a mutual benefit and stock company, having for its object, to assist the members thereof to become their own landlords, or owners of such real estate as they might need; and, to carry out this object, said Association was authorized to loan money, at a rate not exceeding six per cent, per an-num, on mortgage, or by deed of. trust, on real estate. Said Association was organized on the 2d of *421 August, 1854, and adopted a constitution and Bylaws for its government. The complainant became the subscriber for twenty shares of stock in said company, and, as such, paid into the treasury thereof $20 per month, „ or one dollar per share per month; and he continued to pay the same, from the 2d of August, 1854, to the 31st of December, 1856, when he borrowed or bought of said Association, a certain sum of money, under the rules and regulations of said Association, as set forth in article 5th, as adopted by the Association or company.
The complainant being the owner of twenty shares, they were supposed to be worth $4,000, when the Association would wind up, and it was to wind up, when said Association had a sufficient capital to make each share worth $200, which was calculated would be in about seven years from its commencement.
The complainant was allowed to bid on the sum of $4,000, which he did, and bought the same at 371 per cent, discbunt, or, as it is termed by them, “the premium off;” and he did receive, on the 31st of December, 1856, the sum of $2,500, and from that time, he had been compelled to pay to said Association, the sum of $40 per month,' instead of $20, as previously. Before receiving the said $2,500, he executed, on the said 31st of December, 1856, a mortgage to the Building Association, to secure the re-payment of the said $4,000. He furthermore executed to the said Association, his bond, in the penal sum of $8,000, conditioned for the payment of the said sum of $4,000, by monthly installments of $20, and con *422 veyed by assignment to said Association, a certificate of stock of twenty shares, to secure tbe payment of the $4,000. By the provisions of the deed, should he fail to pay the said sum of $40 per month, for a period of three months, then the Treasurer of the said Association, should advertise and sell the land, as Trustee, without the equity of redemption, at public sale, to the highest .bidder; and receive the purchase money, or a sufficient amount thereof, to pay the said sum of $4,000, or any balance thereof, unpaid, with any fines and penalties inflicted for default of payment.
By the 4th section, article 5th, of the constitution, if any Stockholder fails to pay his monthly dues, he forfeits ten cents for every such failure, and for each dollar thus 'unpaid, which is charged and added to the monthly dues. From the 31st of December, 1856, to the 31st of March, 1860 — three years and three months — the complainant continued to pay said $40 per month — making the sum of $1,560, when he ceased to pay; and the Association now claims to be due, on the 31st of October, 1860, the further sum of $280.
On the 19th day of January, 1859, the complainant bought of a stockholder, by paying the amount previously paid in by said stockholder, twenty other shares,on which he borrowed, in the manner previously stated, the supposed value of twenty shares — $4,000—at a premium of 21 per cent., and received $3,160 in cash, and gave mortgage, bond, and assignment, as before stated, and continued to pay till the 31st of March, 1860 — fourteen months — $560; and said Association *423 claims to be due the further sum of §280, on the 14th of October, 1860. The lands were advertised to he sold under the trust deed. The complainant charges that the contracts are usurious; that the deed and assignments were made to secure money, a large part of which is usury; that the moneys still claimed, are, or a large part thereof, is usury. The bill prays that the sale he enjoined; that an account he taken, to ascertain the amount of usury heretofore paid by him, and the amount now claimed; that the defendants he enjoined from collecting the same; that the amount he now owes be ascertained and declared. The amended hill charges that- the stock assigned to secure said loans, has been sold by the Association, and that the same be credited on his debt. The defendants admit incorporation and organization, as charged; refer to their charter and by-laws, for their power and authority, and, particularly, to loan money to their stockholders. They admit that the Association sold the stock of the complainant, and it brought $3,420, for which they gave the complainant a credit; but when the credit was given, the Association was entitled to the monthly installments paid in. The Act of Incorporation, and the constitution, by-laws, and regulations, were made a part of the bill. The mortgage deed executed by the complainant, recites, that, “Whereas, O. E. H. Martin has this day executed his land, by which he is firmly bound to the Nashville Building Association, in the sum of §8,000, conditioned for the payment of §4,000, in the manner following: that is to say, §40, on or before th-1 *424 last day of each month succeeding the date of these presents, until the whole sum of $4,000 be paid, and satisfied. Now,” etc.
The Chancellor was of opinion, that the contract was usurious, and that the constitution, by-laws and regulations operated injuriously and oppressively upon the members and the borrowers of its money, and that the effect was to exact usury from the complainant.
An account was ordered, from which defendants have appealed to this Court.
The principal question presented for our consideration, is, “was this a usurious contract?” Usury is an “illegal and corrupt agreement, whereby more than legal interest is taken for the loan of money:” 5 Hum. R., 407. It is not an inference of law, but a question of intention, to be made out by the facts proved: Hamilton vs. Moore, 7 Hum. E., 35. To arrive at correct conclusions in this case, it becomes necessary to examine the Act of incorporation of the defendants, and the constitution adopted by them for their government, and the transaction of their business; and see if the powers assumed by them are within the provisions of the Act, and in violation of no law of the land, and particularly the law of usury. The object and purposes of said Act creating the Association, was to incorporate a mutual benefit and stock company — having for its object to assist the members thereof to become their own landlords, or the owners of such real estate as they may need, instead of being renters thereof. All the powers, rights, privileges *425 and immunities which, are incident to corporations, were granted to them. They were authorized to adopt a constitution, rules, by-laws, and regulations, that were to have the force of legal enactments; provided, they did not conflict with the laws of the land. By the 3d section of the Act, the capital stock of the Corporation was divided into shares of one dollar per month, each to he paid monthly, until the Corporation shall determine and close; and the capital stock shall not he less than $2,000, nor more than 5,000 shares. Sec. 4th provides, that the funds of the Corporation shall be loaned out to the stockholders, on such terms and conditions, and under such regulations as the Corporation may prescribe by its constitution and by-laws; provided, the same be secured by real estate; and any moneys not wanted by the stockholders, may be loaned to others at six per cent., secured by real estate. Section 5 th gives them power to take and hold real estate by mortgage, conveyed in trust to secure the funds loaned. Section 6th provides, when each stockholder for each and every share of stock by him or her held, shall be entitled to receive the sum of $200, on distribution of the funds of said Association, when it shall wind up, terminate and close.
Under article the 5th, sec. 1st, of the constitution, each stockholder for each and every share he or she may hold in said Association, shall be entitled to purchase an advance of stock of. $200, and no more. Section 2d of article 5th, provides, the amount paid into the treasury each month, shall, at the monthly meet *426 ings of the directors, he sold to the highest bidder or bidders, among the stockholders, in such sums as the directors may see fit; provided, the same be not sold under par, and be secured by real estate fully equal to the net sum advanced. Section 3d of article 5th provides, that any stockholder taking an advance, shall allow to be deducted the premium offered by him or her for the same, and shall secure the Association by-bond and mortgage, and policy of insurance, renewed annually at his expense; he or she shall pay all costs that may accrue for examining titles, drawings, acknowledging, recording and preparing all papers in connection with said security. Section 4th provides for $200 advance made to a stockholder — one share of stock shall be assigned as collateral security. Section 5th provides, that any stockholder taking an advance, shall pay to the Treasurer, in addition to his or her monthly dues for shares, one dollar per month for each share on which such advance is made, or at the rate of six per cent, per annum on the whole amount, including the premium. Section 7th provides, should any stockholder, having received any portion of stock in advance, neglect to pay any or all of his or her dues to the Association, for three successive months, then the Directors may compel payment of principal and interest, by instituting proceedings on the bond, according to law; and when any sale shall take place, of the property mortgaged to the Association, the directors shall have power to retain and apply so much of the purchase money as would be required to redeem the property, according to the provisions contain *427 ed in the 6th article of the constitution, together with all other payments, moneys and expenses, due the Association, and shall pay the surplus thereof to the mortgager. Section 3d, in the 6th article referred to, in the last section, provides, that should any stockholder desire to have his or her property discharged, from the mortgage, before the Association shall have regularly terminated, he or she shall be allowed so to do, by paying into the hands of the Treasurer, such a sum of money as shall — at the rate of premium the funds then selling — produce the same monthly payment of interest as that which the said stockholder had previously been paying in his or her advance; provided such sums shall, in no case, be less than the net amount received by him or her; and provided, further, that no release shall be. given until the money paid for such release shall have been sold, and the security offered for the same be approved by the directors, and the papers connected therewith, duly executed; such stockholder paying all costs connected with the redemption of the mortgaged property. Section 4th of this article provides, that when any member has obtained loans, and desires to have buildings erected upon said property, he may submit his contract to said directors, and they, if they' are satisfied that the amount is adequate to complete the improvements, shall so apply it, but the Association, by this operation, shall lose no interest. Article 9th provides, that the capital stock shall not be more than five thousand shares.
These are the principal articles and sections in the *428 constitution adopted by, the Association on the 2d of August, 1864, and which, it is insisted, they had the right to adopt, and when adopted, are obligatory upon its members; that the complainant being a member, having voluntarily became a subscriber thereto, is bound by the constitution and by-laws of the Association. It is a well settled principle of law, that, when a corporation is duly created, the law tacitly annexes to it the power of making by-laws, or private statutes, for its • government and support: Angel & Ames on Corp., 384. But the by-laws of a corporation must not be inconsistent with its charter, for this instrument creates it an artificial being, imparts to it its power, designates its objects, and usually prescribes its mode of operation. It is, in short, the fundamental law of the corporation, and in its terms and spirit, as a constitution, to the petty legislation of the body acting by and under it; hence, all by-laws in contravention of it, are void: Angel & Ames on Corp., 401.
The power delegated in the charter of this Association, which says the constitution and by-laws shall have the force and effect of legal enactment upon its members, is of no greater force than the incidental powers .usually given to corporations in their charters. It is further provided, in the charter of defendants, that the constitution and by-laws shall not conflict with the laws of the land. These principles being recognized as the law governing corporations, in the adoption of their constitution and by-laws for their government, is the constitution consistent with their charter? Did the Legislature intend to invest this Association with such rights *429 and powers as are attempted to be exercised in the constitution? To ascertain this, we must look to the charter, for it is this that gives life to the artificial being, imparts to it its powers, and designates its objects. The language of the charter is: “An Association, which shall be a mutual benefit and stock company, having for its object, to assist members thereof to become their own landlords.” There can be no doubt, the intention of the Legislature was for the laudable object of aiding the poor, in providing for themselves comfortable homes. Such being the manifest intention of the Legislature, the constitution and by-laws must not be inconsistent with that intention, otherwise they are merely void.
How far does the constitution adopted by this Association, conform to the spirit and intention of the charter? Can it be inferred, by the most liberal construction of the constitution adopted by this Association, the object and purpose was to aid working men in procuring houses? The rules and regulations show how persons may become stockholders. The small sum of one dollar per month on a share is paid to the treasurer. The working man sees how he can well spare that sum from his hard and meagre earnings. He continues a member for twelve months, paying his regular dues. He wishes to procure a house; the money is offered, and he becomes a bidder, at, we will say, the price of 371 per cent, premium, the shares being estimated at the fictitious value of $200. Twenty shares are struck off to him, valued at $4,000. He receives the sum of $2,500, and executes his bond for $8,000, conditioned to pay $4,000, with the interest. He then *430 executes a mortgage on his home, conditioned to pay $40 per month until the $4,000 is paid. Previous to execution of the mortgage, the titles are examined by the attorney. The preparation of the deeds, the acknowledging and registration, are all to be paid by the mortgager. He thus places himself within the power of the Association. Month after month, his calls of $40 each are to be met — there is no escape. He is within the foils of this ingenious net, spread by the cunning hand of an association of money-lenders, who know no mercy. If he fails to pay the $40 secured by the mortgage, he is fined ten cents on the dollar, each month, for default; and at the end of the time stipulated in the mortgage, his home is sold from him, without the equity of redemption, not to pay the amount of money borrowed, and the interest, but to raise a sum sufficient to pay the monthly dues of $40 per month. His hard earnings that had been paid in, in monthly installments, is lost, or applied so as to raise the monthly dues of $40, which continue to fall due, with its accumulated burden of interest. He ceases, with the ruin of his estate, to be a member of the Association.
Could it have been the intention of an enlightened Legislature to give such powers, and does the constitution of the Association utterly contravene the obvious intention of the charter — strip the action of this Association and their operations, as defined in their constitution? Is it not for the aim and purposes of loaning money at usury, and an attempt to evade the laws thereof? Can it be anything more than a borrowing or lending of money? Stripped of its complications, it is *431 simply an ordinary transaction of loaning of money at usury.
The complainant in this case, borrows of the Association, $2,500, executes his bond for $4,000, payable at an indefinite time, when the Association shall wind up; gives a mortgage on his land, conditioned to pay $40 a month by way of interest, or which amounts to the same thing, for the use of $2,500. This Association is ingeniously guarded; and as it is but a device to avoid the laws of usury, well has Lord Coke said to those that lend money, “my caveat is, that neither directly or indirectly, by art or cunning invention, they take about six in the hundred, for they seek by slight to creep out of these Statutes, will deceive themselves and repent in the end: Coke upon Lyt., 4 v.” The case in 21 G-a. R., p. 272, has been referred to as authority to sustain the validity of this assertion. Upon an examination of the case, it will be found that the Legislature had granted to the corporation, the right to change' the interest. It appears the Association had been incorporated under the laws peculiar to the State, where the power had been given to the Courts to grant charters; and after organization and the adoption of a constitution and bylaws, similar to to those now under consideration, they obtained a charter from the Legislature, embodying their constitution and by-laws, thereby the Legislature recognized the right of charging interest. No such right being given by the Legislature in this charter, it is an authority against the legality of the acts of this Association.
*432 The case of 10 Mary. R., p. 398, in a case simi lar in principle to the one under consideration, under the Statutes of that State, the Court held the transactions of the Association not usurious, hut fixed a period in which the rights of the parties should be determined — gave interest on the sum secured, and rebutted the interest for two years, and gave a decree for the value of the stock at that time. In two cases that came before the Courts of Pennsylvania in 26 Pa. R., p. 269, the Court held, that any voluntary money association, cannot charge their members, any more than strangers, with usurious interest; that the transactions of money of the Association, are to he treated as. a loan, and that no more can he recovered than the amount actually advanced, with interest. The same principle came before that Court again, reported in 35 Pa. R., p. 469, in which one of the members sued the Association, to recover back the usurious interest paid. The Court said: “the money was paid under the constraint of a formal, though illegal contract; that contract itself was attained by oppression, by taking advantage of the necessities of the borrower, and, of consequence, the usurious interest paid under it.” We are aware that the English Courts have sustained the legalities of these institutions; but, upon an examination of the authorities, it will be found that they were created by An Act of Parliament, in which the powers exercised were expressly delegated.
It is said that these Associations originated with the Earl of Selkirk, of Scotland, in the year 1815. *433 The motives of their founder were purely benevolent, and the experiment was eminently successful, on. account of the beneficial influence they exerted upon the industrious classes. But experience has proven, that the most benevolent schemes,' for the amelioration of the condition of the poor, may be made instruments in the hands of the usurer, when combined in an aggregate corporate mind, and become a terrible system of oppression. It is the duty of the Courts to look into the transaction, and if it be a shift or device, to cover up or conceal usury, or a contract for an advance of money, and thereby evade the laws of usury, it cannot stand.
We are of opinion, that the Act of incorporation did not confer any lawful authority upon said corporation, to make any such constitution, by-laws, rules and regulations; that it is within the powers of the Legislature, to define and prescribe the purposes of the corporation, and not within the power of the corporation itself; and that said constitution, rules and regulations, operate injuriously and oppressively, upon the members and borrowers of money, and the effect was to exact usury from the complainant; that the constitution, by-laws, rules and regulations of this Association, was a scheme, shift and device, to avoid the laws of usury, and a violation of the laws of the land, and are, therefore, inoperative and void. An account will be taken, in which the complainant will be charged with the money received by him, and credited by all the sums of money, paid by him to the Association, with interest; and if any balance *434 should remain due to the Association, tbeir liens against the property will be enforced, if sold for cash, subject to the equity of redemption.
The decree of the Chancellor is affirmed, and the cause remanded for an account.